| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 11 C 02764 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| VILLAGE OF ARLINGTON HEIGHTS, | ) | |
| and MARK DEL BOCCIO, Individually | ) | |
| and as an Agent of the Village of Arlington | ) | |
| Heights, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jane Doe, a minor,[1] sued the Village of Arlington Heights and one of its police officers, Mark Del Boccio, for violating her Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983.[2] Plaintiff also asserted several claims under Illinois state law. Defendants jointly move to dismiss all of the counts. R. 12. For reasons explained more fully below, Defendants' motion is granted. Plaintiff's state law claims (Counts 1-3, 8) are barred by the Illinois Local Governmental and Local Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101 *et seq.* The doctrine of qualified immunity precludes Plaintiff's claim against Officer Del Boccio (Count 4), and the

---

[1]The plaintiff filed this lawsuit under a fictitious name. Federal Rule of Civil Procedure 5.2(a)(3) requires that filings refer to a minor by the minor's initials, but neither party has balked at the use of the Jane Doe moniker. For the purposes of this opinion, the Court refers to the minor as "Plaintiff."

[2]The Court has subject matter jurisdiction in this federal-question case under 28 U.S.C. § 1331, and the state-law claims are covered by supplemental jurisdiction.

remaining federal claims (Counts 5-7) must be dismissed because the complaint does not allege facts sufficient to state causes of action under § 1983.

## I.

In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations. On May 6, 2009, Plaintiff was drinking alcohol with a group of teenagers at an apartment complex in Mount Prospect and Arlington Heights, Illinois. R. 2-1 (Compl.) at 1-2.[3] Around 7:15 p.m., a site manager at the apartment complex observed the group drinking and smoking near the complex's dumpster and called 911 to report them. *Id.* at 2. Shortly after placing the 911 call, the site manager saw some of the members of the group leave the complex. *Id.* at 3. Plaintiff and three males remained behind and continued drinking by the dumpster. *Id.* Plaintiff became intoxicated and the three males began walking her to a secluded area. *Id.* Plaintiff was so intoxicated that two of the males had to hold her up and help her walk. *Id.*

At 7:20 p.m., Arlington Heights Police Officer Mark Del Boccio arrived on the scene. *Id.* Del Boccio stopped his police car near the group of teens and rolled down his window. *Id.* Del Boccio spoke with the three males in the group. *Id.* During this time, Plaintiff could not stand up by herself, her head was down, and her eyes were closed. *Id.* One of the males in the group had to hold Plaintiff up from behind. *Id.* Del Boccio

---

[3]The Court cites to page numbers in the complaint, R. 2-1. Although the allegations in the complaint are organized by paragraphs, the paragraph numbers repeat for each count. For example, Count 1 is at paragraphs 1-37, Count 2 is at paragraphs 1-38, Count 3 is at paragraphs 1-42, and so on. To avoid confusion, the Court will refer to page numbers unless otherwise specified.

did not ask any of the teens for their identification. *Id.* at 4. After they were done speaking, Del Boccio permitted the three males to leave the scene and take Plaintiff home. *Id.* at 3-4.

The site manager approached Del Boccio and asked what happened. *Id.* at 4. Del Boccio explained that the three males were taking Plaintiff home. *Id.* The site manager told Del Boccio that the group of teens had been drinking straight from a vodka bottle, but Del Boccio reiterated that the males were taking Plaintiff home. *Id.* at 3. Del Boccio then left the scene. *Id.* at 4. Del Boccio reported to the police dispatch that the subjects of the 911 call were gone on arrival. *Id.* at 5. At some point, Del Boccio called off Officer Patrick Spoerry, who had also been dispatched to the apartment complex. *Id.* at 6. The complaint does not specify when or how Del Boccio notified Spoerry that he was not needed at the scene.[4] *See id.*

After Del Boccio left the scene, the three males carried Plaintiff into the laundry room at the apartment complex. *Id.* at 5. The site manager observed Plaintiff being taken into the building and again called 911. *Id.* This time, Mount Prospect police officers responded to the call. *Id.* When the officers entered the laundry room, they observed one of the males sexually assaulting Plaintiff. *Id.* All three males were arrested.[5] *Id.*

---

[4] The prefatory language in paragraph 34 (page 6) of the complaint shows that it is likely Plaintiff's contention that Del Boccio called off Spoerry *after* speaking with the three males in Plaintiff's company, but it is not entirely clear.

[5] According to Defendants' brief, Christopher Balodimas, who Plaintiff alleges was twenty years old at the time of the assault, is currently serving six years in prison for sexually assaulting Plaintiff. R. 13 (Defs.' Br.) at 1; Compl. at 2, 5.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When ruling on a defendant's motion to dismiss, the Court must accept the plaintiff's allegations as true and draw reasonable inferences in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McGowan v. Hulick*, 612 F.3d 636, 637 (7th Cir. 2010).

## III.

42 U.S.C. § 1983 provides a cause of action against a person, who, acting under color of state law, deprives an individual of any "rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It provides the procedural vehicle for bringing suit as a "method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quotation omitted). The plaintiff must identify the specific constitutional right that was infringed. *Id.* at 394.

Here, Plaintiff's federal claims (Counts 4-7) allege infringement of Plaintiff's Fourth and Fourteenth Amendment rights. Compl. at 32-62. Count 4 alleges a claim against Del Boccio for deliberate or reckless indifference to Plaintiff's liberty and personal security interests based on his conduct at the scene. *Id.* at 32-42. Counts 5, 6, and 7 are alleged against the Village of Arlington Heights. Specifically, Count 6 is based on Del Boccio's conduct at the scene, *id.* at 48-58, and Counts 5 and 7 both allege that Arlington Heights is liable because it did not properly screen Del Boccio before hiring him. *Id.* at 43-47, 59-62.

Defendants argue that Plaintiff's § 1983 claims must be dismissed because, based on the facts alleged, Defendants did not violate any of Plaintiff's rights under the Constitution. R. 13 (Defs.' Br.) at 5-7. And, even if Del Boccio violated Plaintiff's constitutional rights, the doctrine of qualified immunity shields Del Boccio from liability in this case. Defs.' Br. at 7-8. Finally, Defendants argue that Plaintiff's federal negligent hiring claim against the Village must be dismissed for failure to state a claim. Defs.' Br. at 9-12. The Court addresses each argument in turn, beginning with qualified immunity.

# A.

Defendants argue that Del Boccio is entitled to qualified immunity.[6] Defs.' Br. at 7-8. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Put another way, the general purpose of qualified immunity is "to provide government officials with the ability 'reasonably [to] anticipate when their conduct may give rise to liability for damages.'" *Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)).

Qualified immunity analysis comprises two parts: (1) whether the facts alleged amount to a constitutional violation and (2) whether the violation was clearly established at the time of the defendant's conduct. *Pearson*, 555 U.S. at 236 (overruling mandatory sequential two-step procedure of *Saucier v. Katz*, 553 U.S. 194 (2001)). Courts have discretion to consider whether the violation was clearly established before (or in some cases, without) determining whether the conduct amounts to a

---

[6]Qualified immunity does not apply to municipalities. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

constitutional violation. *Id.* at 236-39. In this case, the Court first considers whether the alleged violation was clearly established.

## 1.

Plaintiff contends that her constitutional rights were violated when Del Boccio failed to properly investigate the 911 complaint and, instead, decided to "cover his trail" by calling off Officer Spoerry and reporting to dispatch that the subjects of the complaint were not at the scene. Pl.'s Br. at 13-14. Defendants argue that even if Plaintiff's allegations make out a deprivation of a constitutional right, a reasonable officer in Del Boccio's shoes would not have known that failing to conduct a more thorough investigation before allowing Plaintiff to leave the scene violated Plaintiff's rights under the Fourteenth Amendment. Defs.' Br. at 7-8. Thus, Defendants contend that Plaintiff's inability to show the existence of a "clearly established" right entitles Del Boccio to qualified immunity in this case.

To show that a right is clearly established, "the plaintiff must demonstrate either that a court has upheld the purported right in a case factually similar to the one under review, or that the alleged misconduct constituted an obvious violation of a constitutional right." *Lunini v. Grayeb*, 395 F.3d 761, 769 (7th Cir. 2005). There does not need to be a factually indistinguishable case on point, *see United States v. Lanier*, 520 U.S. 259, 269 (1997) (in similar 18 U.S.C. § 242 context, no need for a "fundamentally similar" factual situation), but the violation must be "clear in the specific context of the case." *Moss v. Martin*, 614 F.3d 707, 712 (7th Cir. 2010).

Here, Plaintiff's allegations against Del Boccio fall into two general categories. First, Plaintiff alleges that Del Boccio violated her constitutional rights by failing to adequately investigate the 911 complaint. Specifically, Del Boccio failed to obtain identification from any of the teens; failed to run name-checks on any of the teens; failed to determine whether any of the teens were engaged in underage drinking; failed to ask Plaintiff about her well-being despite her clearly incapacitated state; failed to offer Plaintiff medical assistance; and failed to ensure that Plaintiff made it home safely. *See* Compl. at 36-37. All of these allegations relate to things that Plaintiff claims Del Boccio *should have* done as a police officer, but did not. The second category of allegedly unlawful conduct relates to actions taken by Del Boccio to prevent other police officers from arriving on the scene. Plaintiff alleges that Del Boccio called off Officer Spoerry, who had also been dispatched to scene, and then falsely reported to the police dispatch that the subjects of the 911 complaint were "gone on arrival." Compl. at 36-37. Plaintiff claims that Del Boccio's actions prevented any further investigation or assistance from the Village of Arlington Heights Police Department. *Id.*

As the analysis discussed below demonstrates, *see* § III.A.2, the only plausible constitutional violation in this case stems from the allegation that Del Boccio called off Officer Spoerry, who had also been dispatched to the scene. *Id.* at 6. But it is not clearly established that calling off another police officer violates a constitutional right. Plaintiff does not point to any comparable cases that establish that Del Boccio's conduct violated a constitutional right. *Cf. Siebert v. Severino*, 256 F.3d 648, 654-55 (7th Cir. 2001). And, for the reasons discussed below in § III.A.2, the alleged

constitutional violation is not "so obvious that a reasonable state actor would know that what they are doing violates the Constitution." *Id.* The Court concludes that a police officer would not reasonably have known that calling off another officer or falsely relaying to dispatch that the scene was clear could violate the constitutional rights of a victim of third-party violence.

Accordingly, Count 4 is dismissed because Del Boccio has qualified immunity. Count 6 against the Village of Arlington Heights, which is premised solely on Del Boccio's conduct and not on an alleged Village policy or custom, is also dismissed. *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 304-05 (7th Cir. 2010).

### 2.

The Court now turns to whether Plaintiff has alleged a constitutional violation under the Fourteenth Amendment. Although Plaintiff's § 1983 claim against Del Boccio is precluded because the alleged violation was not clearly established, the Court will address the merits of the alleged violation.[7]

As a general rule, "a State's failure to protect an individual against private violence" does *not* violate the individual's substantive due process rights. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). The Due Process Clause does not impose any affirmative obligations on the state "to protect the life, liberty, and

---

[7]If Plaintiff appeals the qualified immunity ruling, explaining these alternative grounds for decision will permit the parties to present all of the disputed issues to the Seventh Circuit, giving the Court of Appeals a fuller record on which to decide, if it so chooses, all of the issues in one appeal.

property of its citizens against invasion by private actors." *Id.* at 195. Rather, the purpose of substantive due process is "to protect the people from the State, not to ensure that the State protect[s] them from each other." *Id.* at 196; *see also Sandage v. Bd of Comm'rs of Vanderburgh Cnty.*, 548 F.3d 595, 596 (7th Cir. 2008). Outside the context of constitutional litigation, Plaintiff would be perfectly reasonable to demand the police's protection from criminals and to prevent the kind of violent attack that she suffered; within the context of *constitutional* duties, however, the community's intuition is turned around: the Constitution almost exclusively limits government conduct and generally does *not* require the government to prevent the conduct of private actors.

But, as with most general legal rules, there are exceptions to the rule established in *DeShaney. See Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998). For instance, the Seventh Circuit has held that the government *does* have a duty to protect its citizens "if the state disables people from protecting themselves" and/or takes affirmative action that either creates or greatly increases a danger of private violence. *Sandage*, 548 F.3d at 598-99. In other words, the Seventh Circuit explained, a plaintiff can pursue a substantive due process claim under § 1983 in situations where the victim was "safe before the state intervene[d] and unsafe afterward." *Id.* at 598.

Here, Plaintiff alleges that Del Boccio failed to conduct a proper investigation at the apartment complex or otherwise take action to protect Plaintiff, who was severely intoxicated, from the man who later raped her. Compl. at 4-5. Defendants argue that, under *DeShaney*, Del Boccio cannot be held liable for failure to protect

Plaintiff from a private actor. Defs.' Br. at 5-7. Plaintiff responds that her allegations demonstrate that Del Boccio created or increased the danger to Plaintiff. R. 21 (Pl.'s Br. at 19-23). The Court will address the state-created danger exception to *DeShaney* before turning to whether Del Boccio's actions disabled Plaintiff from protecting herself.[8]

Plaintiff alleges that she was extremely intoxicated and on her way to a secluded area with three males when Del Boccio arrived at the apartment complex. Plaintiff was already in a dangerous situation. The question is whether Del Boccio did anything to increase the danger to Plaintiff. Increasing the danger means that the state did "something that turned a potential danger into an actual one, rather than that it just stood by and did nothing to prevent private violence." *Sandage*, 548 F.3d at 600. "Increase" is interpreted narrowly so as not to undo *DeShaney*; there must be more than a causal relationship between inaction and harm. *Id.* at 599. Here, Plaintiff alleges that Del Boccio drove up to the group, spoke to the males, and did nothing to help Plaintiff. Del Boccio left Plaintiff in the hands of the three males—just as the officer found her. That interaction neither created nor increased the danger.

---

[8]The Court's analysis is confined to the first component of the so-called "state-created danger exception." The Seventh Circuit established a three-part test by which to evaluate claims of liability under the state-created danger exception: "First, . . . the state, by its affirmative acts, must create or increase a danger faced by an individual. Second, the failure on the part of the state to protect an individual from such a danger must be the proximate cause of the injury to the individual. Third, because the right to protection against state-created dangers is derived from the substantive component of the Due Process Clause, the state's failure to protect the individual must shock the conscience." *King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007) (citations omitted). Because the first element is not met it is not necessary to consider the other requirements.

Plaintiff argues that Del Boccio's decision to call of Officer Spoerry increased the danger to Plaintiff. Pl.'s Br. at 14. Plaintiff does not cite to—and the Court is not aware of—any Seventh Circuit case law that supports Plaintiff's argument. Generally speaking, the key question in determining "whether state behavior violated the victim's constitutional right is: 'What actions did [the state actor] affirmatively take, and what dangers would [the victim] otherwise have faced?'" *Windle v. City of Marion*, 321 F.3d 658, 661 (7th Cir. 2003) (quoting *Monfils*, 165 F.3d at 517). In *Windle*, the victim-plaintiff was being sexually molested by a teacher at her middle school. 321 F.3d at 659-60. For at least two months, police officers intercepted the plaintiff's phone calls and learned from the plaintiff's conversations that she was being molested by her teacher. *Id.* at 660. Although the officers had sufficient information to launch an investigation and intervene on the plaintiff's behalf, the officers did nothing. *Id. Windle* held that the officers' failure to intervene for two months did not increase the danger. *Id.* at 661-62. The Seventh Circuit reasoned that if the police had never been involved, the danger to the plaintiff would have been the same or worse.[9] *Id.* at 662; *see also Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir. 1993) ("without state intervention, the same danger would exist").

---

[9]In *Windle*, the Seventh Circuit noted that, in her reply brief, the plaintiff mentioned that certain officers in the police department who were concerned about the abuse of the plaintiff were dissuaded from protecting her by the other officers who were already monitoring her phone calls. *Windle*, 321 F.3d at 662 n.3. But because this argument was "mentioned only in passing," the Court found the argument waived and did not "address the question of whether a constitutional violation would exist where one member of a law enforcement unit discouraged or prevented another from protecting a victim." *Id.*

The same is true for this case. Just as the plaintiffs in *DeShaney* and *Windle* were in no worse of a position than they would have been in if the state had not acted at all, so the plaintiff here was in no worse of a position than if the state had not acted. Here, the complaint alleges that Del Boccio responded to the 911 call and, upon doing so, called off Officer Spoerry and notified dispatch that the subjects were no longer at the scene. To be sure, Del Boccio's calls could be considered "affirmative" acts. But this is not the sole inquiry. As the Seventh Circuit explained in *Windle*,

> In focusing exclusively on whether the police acted affirmatively, Appellant fails to grasp that she has to establish that the police failed to protect her from a danger *they created or made worse*. She confuses the inert failure to protect with the proactive creation or exacerbation of danger. In this case, the police did nothing to create a danger, nor did they do anything to make worse any danger [Appellant] already faced.

321 F.3d at 662 (emphasis in original). The facts set forth in Plaintiff's complaint do not allege a scenario in which calling off Officer Spoerry created or increased the danger that Plaintiff was already in at the time the police were summoned.

As one district court has observed, "[t]here have been only a few instances where the Seventh Circuit found state behavior to have affirmatively created or increased a danger faced by an individual." *Gillard v. Royer*, 2010 WL 1780325, at *5 (E.D. Wis. Apr. 30, 2010). And those few cases are distinguishable from the instant case. For example, in *Monfils v. Taylor*, Thomas Monfils (the victim) called the police with an anonymous tip that his co-worker was planning to steal an electrical cord. 165 F.3d at 513. The co-worker was stopped by security as he was leaving work that day and, after refusing to submit to a search, was suspended from work for five days. *Id.* Enraged

that someone had tipped off the police, the co-worker requested that the police release the tape recording of Monfils's phone call so that he could identify the informant. *Id.* Meanwhile, Monfils became concerned for his safety and called the police again to remind them that he wanted to remain anonymous. *Id.* at 514. The police ultimately released the tape to Monfils's co-worker. *Id.* at 515. Within hours, the co-worker identified the informant as Monfils, and killed him. *Id.*

Monfils's widow brought a substantive due process claim under § 1983 against a police officer, individually, and the city. *Id.* The Seventh Circuit held that there was sufficient evidence for the jury to conclude that the officer violated Monfils's substantive due process rights by placing him in a position of danger greater than he would otherwise have faced. *Id.* at 517. The court "looked at the state's affirmative action of releasing the tape and the fact that, had the state not released the tape, Monfils would have faced considerably less danger. Therefore, the state enhanced the danger and by failing to protect Monfils from that danger, it violated his due process rights." *Windle*, 321 F.3d at 661; *see also White v. Rochford*, 592 F.2d 381, 382 (7th Cir. 1979) (district court's dismissal of complaint alleging § 1983 violation reversed where police officers left children alone in a car on a cold night after arresting the minors' guardian, resulting in mental and physical damage to the children).

The government similarly increased the danger in *Reed v. Gardner*, where the police arrested the driver of a car, leaving behind a passenger they knew was drunk with the car's keys. 986 F.2d 1122, 1124 (7th Cir. 1993). A few hours later, the drunk passenger became a drunk driver who swerved into oncoming traffic and killed a

woman riding in another car. *Id.* "It was the police action in removing [the driver], combined with their knowledge of [the passenger's] intoxication, which creates their liability for the subsequent accident." *Id.* The Court noted that police officers who affirmatively created or increased the danger could be held liable, but "officers could watch drunk drivers stumble to their cars and drive off, weaving across the road, without incurring section 1983 liability." *Id.*

In *Monfils* and *Reed*, the state actors took affirmative steps that actually created a danger which did not exist before they were involved. In contrast, Del Boccio did nothing to create or increase the danger posed to Plaintiff by Balodimas or the other males in the group. Assuming the allegations are true, Del Boccio did an atrocious job of protecting Plaintiff that evening. But Plaintiff's complaint does not sufficiently allege facts that fall within the "state-created danger" exception to *DeShaney*. Plaintiff does not sufficiently allege that Del Boccio acted to *create* the danger, or *contribute* to an existing danger. *See Losinski v. Cnty. of Trempealeau*, 946 F.2d 544, 550 (7th Cir. 1991). "The essence of the Court's exception in *DeShaney* is state creation of dangers faced or involuntary subjection to known risks." *Id.* at 551.

Thus, even assuming that, but for Del Boccio's call, Officer Spoerry would have arrived on the scene before Plaintiff was raped and conducted a more thorough investigation, Plaintiff's claim cannot advance under the governing law. Del Boccio was the officer to respond to the 911 complaint, and his "assistance fell short of protecting [Plaintiff] from harm." *Reed*, 986 F.2d at 1126 (citing *Losinski*, 946 F.2d at 550-51). Del Boccio's decision to handle the 911 complaint by himself did not change a safe situation

15

into a dangerous one. The argument that such conduct created or increased the danger to Plaintiff is weaker here than it was in *Monfils* and *Reed*, where the victims would have faced considerably less danger had the officers not deprived the drunk passenger of his driver without providing a viable alternative in *Reed*, or had the officers not released the tape recording identifying the informant in *Monfils*.

With no case law in this Circuit directly on point, Defendants rely on the Sixth Circuit's analysis in *Jackson v. Schultz*, 429 F.3d 586 (6th Cir. 2005). Defs.' Reply at 11. In *Jackson*, the plaintiff alleged that paramedics increased the danger to the decedent when they placed him in an ambulance, where it was less likely that another state actor or private person would render adequate medical care (as opposed to the allegedly inadequate care the decedent received). *Jackson*, 429 F.3d at 591. The Sixth Circuit held that the plaintiff did not state a constitutional claim that the paramedics hindered state aid "because state actors do not have a general duty to render aid." *Id.* (citing *DeShaney*, 489 U.S. at 196). Nor did the state cut off private sources of rescue because the plaintiff did not allege that any private rescue was available or attempted. *Id.* at 591-92. The paramedics did not discourage others from entering the ambulance and the decedent was free to leave (or be removed from the ambulance). For these reasons, *Jackson* concluded that the plaintiff failed to allege sufficient facts to support a claim for a constitutional violation based on cutting off aid. *Id.*; *see also Carver v. City of Cincinnati*, 474 F.3d 283, 286 (6th Cir. 2007).

The Court agrees that *Jackson* lends support to the conclusion that Plaintiff fails to allege a constitutional violation in this case. In fact, this case is even more removed

than *Jackson*, in that Del Boccio never affirmatively placed Plaintiff in his squad car and out of view of other potential rescuers. There is no basis on which to conclude that Del Boccio prevented help so as to overcome *DeShaney*. Because Plaintiff does not allege facts showing that Del Boccio created or increased a risk that Plaintiff would be assaulted by Balodimas, Plaintiff fails to state a substantive due process claim.

The Court next addresses the second exception under *DeShaney*: whether Del Boccio took away Plaintiff's capacity for self-help. As already discussed, "the Constitution does not require the government to protect citizens from privately created danger." *Witkowski v. Milwaukee Cnty.*, 480 F.3d 511, 513 (7th Cir. 2007). But it may "demand protection if the state disables people from protecting themselves; having rendered someone helpless, the state must supply the sort of defenses that the person could have provided on his own." *Id.* "[T]hat is, when a state has custody over a person, it must protect him because no alternate avenues of aid exist." *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Monfils*, 165 F.3d at 516). The proper custody inquiry is whether Del Boccio engaged in a "restraint of personal liberty" similar to the restraints mentioned in *DeShaney*, 489 U.S. at 200.

Plaintiff does not allege that she was in the custody of Del Boccio. Thus, the second exception to the *DeShaney* rule does not apply because Plaintiff was never incarcerated or otherwise physically restrained by the state. *See id.*; *see also Monfils*, 165 F.3d at 517 ("The basis of a special relationship is that the state has some sort of control or custody over the individual, as in the case of prisoners, involuntarily committed mentally ill persons, or foster children."); *Kitzman-Kelley v. Warner*, 203

F.3d 454, 458 (7th Cir. 2000) (the State has a "special relationship" with those it has taken into custody) (citing *Hutchinson v. Spink*, 126 F.3d 895 (7th Cir. 1997)). For instance, the Seventh Circuit has "generally rejected the idea that a school has a 'special custodial relationship' with a student for purposes of the *DeShaney* exception." *Martin v. Shawano-Gresham Sch. Dist.*, 295 F.3d 701, 708 n.6 (7th Cir. 2002). Moreover, Del Boccio did not cut off help entirely, as evidenced by Plaintiff's allegation that the apartment complex site manager called 911 again after Del Boccio left and the Mount Prospect police responded to the call. Compl. at 36. Also, Plaintiff does not allege that Del Boccio did anything to cause her intoxication, which limited her capacity to seek help on her own. Based on the facts alleged, there is no constitutional violation under *DeShaney's* "custody" exception.

Finally, Plaintiff argues that Del Boccio violated her constitutional rights by failing to provide her with medical attention. Pl.'s Br. at 16-17. Plaintiff contends that her claim is governed by the Fourth Amendment and its "objectively unreasonable" standard. Pl.'s Br. at 16. But, as Defendants correctly point out, Plaintiff does not allege that she was in custody. Defs.' Reply at 18-19. Indeed, this Circuit's case law establishes that, in denial of medical care cases, "the protections of the Fourth Amendment apply at arrest and through the *Gerstein* probable cause hearing, due process principles govern a pretrial detainee's conditions of confinement after the judicial determination of probable cause, and the Eighth Amendment applies following

conviction." *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006).[10] "Government generally has no constitutional duty to provide rescue services . . . to people not in its custody." *Salazar v. City of Chicago*, 940 F.2d 233, 237 (7th Cir. 1991). Plaintiff cannot state a § 1983 claim for failure to provide medical care. The cases on which Plaintiff relies, such as *Williams v. Rodriguez*, 509 F.3d 392 (7th Cir. 2007) and *Paine v. Johnson*, 689 F. Supp. 2d 1027 (N.D. Ill. 2010), do not apply because they involve individuals in custody.

## B.

Plaintiff also makes certain allegations against the municipality defendant in this case, the Village of Arlington Heights (Counts 5, 7). A local government may be independently sued under § 1983 for an injury inflicted solely by its employees or agents only if it relates to the execution of the city's official policy or custom. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). To successfully state a claim for municipal liability, a plaintiff must allege "(1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well settled as to constitute a custom or usage with the force of law even though it is not authorized by written law or express policy; or (3) an allegation that a person with final policy-making authority caused the constitutional injury." *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 844 (7th Cir. 2004).

---

[10]Pre-trial detainees may invoke the substantive due process clause to demand in-custody medical treatment similar to that required by the Eighth Amendment following sentencing.

Plaintiff claims that the Village violated her substantive due process rights "by maintaining an official policy, custom or practice of failing to perform a proper background check on Mark Del Boccio prior to hiring him as a police officer." Compl. at 43. But, to establish such a policy, a plaintiff must allege more than conclusory legal elements of the cause of action; she must allege facts. To support her claim, Plaintiff alleges no facts other than the single episode of failing to perform a proper background check on Del Boccio. That is insufficient to state a claim of municipal liability in this context. *See Twombly*, 550 U.S. at 570; *Looper Maint. Serv. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir. 1999) ("Boilerplate allegations of a municipal policy, entirely lacking in any factual support that a city policy does exist, are insufficient.") (quotation omitted).

Additionally, when § 1983 claims are premised on an inadequate background check, the plaintiff must demonstrate that the municipality showed "deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410-11 (1997). Deliberate indifference is a strict standard; the constitutional violation must have been the "plainly obvious consequence" of the hiring decision and courts must "carefully test the link between the . . . decision and the particular injury alleged." *Id.*

Plaintiff alleges that the Village of Arlington Heights was deliberately indifferent in its background check of Del Boccio and its decision to hire him because of a prior reckless driving incident. Compl. at 59-60. The complaint alleges that Del

Boccio previously ran over two children with his patrol car when he worked as a Chicago Police Officer and that he lied to his superiors, claiming he had been pursuing a gunman. *Id.* Even taking these facts as true, the particular constitutional violations alleged in *this* case would not have been the plainly obvious consequence of hiring Del Boccio. The link between the driving incident and Del Boccio's allegedly inadequate investigation of the 911 complaint is far too tenuous to satisfy the strict *Brown* standard.

Thus, Counts 5 and 7 would still fail even if they satisfied the threshold requirements for municipal liability under *Monell.* Accordingly, the Court grants Defendants' motion to dismiss Counts 5 and 7.[11]

## IV.

Plaintiff also brings various tort claims under Illinois law (Counts 1-3, 8). Defendants argue that six different provisions of the Local Governmental and Local Governmental Employees Tort Immunity Act preclude the state law claims against Del Boccio and the Village of Arlington Heights. Defs.' Br. at 2, 13-15 (citing 745 ILCS 10/2-101 *et seq.*). In particular, Defendants point to § 4-102 of the Act, which provides:

> Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals.

---

[11]Count 7 fails for the additional reason that a due-process claim cannot be founded on negligence. *Loubser v. Thacker*, 440 F.3d 439, 442 (7th Cir. 2006).

745 ILCS 10/4-102. Defendants argue that this section immunizes Del Boccio and the Village from Plaintiff's claim that they failed to provide adequate police protection, failed to prevent the commission of Balodimas's crime, and failed to detect Balodimas's crime before it occurred. Defs.' Br. at 14. Similarly, Defendants argue that Del Boccio and the Village are *not* liable for failing to arrest Balodimas before he committed his crime, 745 ILCS 10/4-107 ("Neither a local public entity nor a public employee is liable for an injury caused by the failure to make an arrest or by releasing a person in custody."); for failing to "enforce all ordinances," 745 ILCS 10/2-103, 10/2-205 (neither local public entity nor a public employee is "liable for an injury caused . . . by failing to enforce any law"); or for any injury caused by the acts of Balodimas, 745 ILCS 10/2-204 (A public employee "is not liable for an injury caused . . . by the act or omission of another person."). *See also* 745 ILCS 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable.").

Plaintiff contends that the Tort Immunity Act does not apply because her claims fall within a special duty exception and because she alleges willful and wanton conduct. Pl.'s Br. at 4-8. But, as the Illinois Supreme Court clarified in *Ries v. City of Chicago*, 950 N.E.2d 631, 645 (Ill. 2011), there is no willful and wanton exception for provisions of the Tort Immunity Act that do not explicitly include that type of exception in the statute's text. *Ries*, 950 N.E.2d at 641-44 (noting specifically that the willful and

wanton exception in § 2-202 does not apply to § 4-102).[12] None of the provisions cited by Defendants include an express exception for willful and wanton conduct.[13] And the Illinois Supreme Court has also ruled that "the special duty doctrine cannot, and was not intended to, contravene the immunities provided to governmental entities under the Tort Immunity Act." *Zimmerman v. Village of Skokie*, 697 N.E.2d 699, 708 (Ill. 1998); *see also Hess v. Flores*, 948 N.E.2d 1078, 1087 (Ill. App. Ct. 2011).

Accordingly, the Tort Immunity Act bars Plaintiff's state law claims, and Counts 1, 2, 3, and 8 are dismissed.

---

[12]Plaintiff cites *Torres v. City of Chicago*, 123 F. Supp. 2d 1130 (N.D. Ill. 2000) for the proposition that the Tort Immunity Act does not apply to a police officer's failure to provide medical care. Pl.'s Br. at 4. *Torres* held that medical care does not fall under § 4-102 because it was not a police protection service. *Torres*, 123 F. Supp. 2d at 1135. However, Del Boccio's failure to provide Plaintiff with medical care still qualifies under other immunity provisions that do not contain exceptions for willful and wanton conduct: § 2-103 and § 2-205 (immunity for failing to enforce a law, for public entities and public employees, respectively); or § 2-204 (immunity for injury caused by act or omission of another person).

[13]Plaintiff's reliance on *Doe-3 v. White*, 951 N.E.2d 216, 229 (Ill. App. Ct. 2011) is misplaced because *Doe-3* cites *Doe v. Calumet City*, 641 N.E.2d 498 (Ill. 1994), which was overruled by *Ries*, 950 N.E.2d at 644, and is no longer good law.

## V.

For the reasons stated above, Defendants' motion to dismiss [R. 12] is granted.


ENTERED:

Honorable Edmond E. Chang
United States District Judge

DATE: March 29, 2012